

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-11-2007

# Ningsih v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5435

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Ningsih v. Atty Gen USA" (2007). 2007 Decisions. Paper 1326.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1326

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-5435

YULI NINGSIH;
ALBERT MAXI SAMBOR,
                                        Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

PETITION FOR REVIEW OF A DECISION OF
THE BOARD OF IMMIGRATION APPEALS
Agency No. A96-257-681
Immigration Judge: Miriam K. Mills

Submitted Under Third Circuit LAR 34.1(a)
March 27, 2007

Before: RENDELL, BARRY and CHAGARES, Circuit Judges

(Filed:  April 11, 2007)

OPINION

BARRY, Circuit Judge

        Petitioners, Yuli Ningsih and Albert Maxi Sambor, ethnic Chinese Christians who

are natives and citizens of Indonesia, petition for review of an order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the following reasons, we will deny the petition.

**I.**

Sambor entered the United States on May 9, 1999 as a visitor in transit and was authorized to remain in the country until May 14, 1999. Ningsih entered the country on January 10, 2001 as a visitor for pleasure. She was authorized to remain in the United States until July 9, 2001. Both failed to leave as required. They met here, and were married on July 24, 2001. Ningsih gave birth to their child, Christopher, on April 14, 2002.

Ningsih filed an application for asylum and withholding of removal in February 2003. Sambor relied on this application for purposes of asylum, but filed his own application seeking withholding of removal and protection under CAT in June 2003.

In April 2003, both Ningsih and Sambor were served with Notices to Appear, which alleged that they were removable as non-immigrants who remained in the United States for periods of time longer than permitted, in violation of section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(B). They conceded the charges before the Immigration Judge and reasserted their various claims for relief.

At an August 26, 2004 hearing, petitioners presented limited testimony, relying

primarily on their respective applications. Ningsih testified that she delayed filing her asylum application because she was diagnosed with hepatitis B and was advised to rest during her pregnancy, needed time to fill out the documents, and was busy taking care of her child and "doing home activities." (A.R. 44.) As for her reasons for leaving Indonesia, Ningsih testified that she was accosted by several men on a bus who threatened her because of her position as a youth leader in her church.[1] She did not report the incident to the police. Her application also discussed discrimination she suffered as a child, the burning of her father's store, and the anxiety she experienced as a result of the 1998 riots.[2] Ningsih and Sambor both testified that numerous family members have remained in Indonesia without serious incident. In addition, the IJ questioned Ningsih about a letter purportedly written by the pastor of her church in Indonesia, which, despite being dated September 15, 2002, referenced, according to Ningsih, the terrorist bombings in Bali, which occurred on October 12, 2002.

Following the hearing, the IJ issued an oral decision denying petitioners' applications but granting voluntary departure. The IJ concluded that petitioners' asylum application was untimely because it was filed more than one year after Ningsih's arrival

---

[1] According to the transcript, Ningsih testified that she was "frequently fondled" by these men. (A.R. 37.) A reference to such behavior, however, is not found anywhere else in the administrative record or in the briefs of the parties in this appeal.

[2] Sambor's application recounts only one incident—a March 1999 robbery of which he was the victim. Sambor makes almost no attempt to link this to his Chinese ethnicity or Christian faith, remarking only that another victim of the violence "was a Chinese woman." (A.R. 188.)

in the United States. The IJ found that Ningsih's various excuses for this delay did not amount to "extraordinary circumstances." (A.R. 18.) Citing numerous inconsistencies and the "incredulous excuses" proffered by Ningsih for her delay, the IJ also determined that Ningsih was not credible. (A.R. 19.) The IJ concluded that, in any event, petitioners did not allege incidents which amounted to persecution and could not show a well-founded fear of persecution if they were to return to Indonesia.

By order dated November 18, 2005, the BIA adopted and affirmed the IJ's decision. In addition, the BIA rejected petitioners' argument that they had established a pattern and practice of persecution against Chinese Christians in Indonesia.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). Where, as here, the BIA adopts the findings of the IJ but also engages in a discussion of various issues, we review both the IJ and the BIA. Sukwanputra v. Gonzales, 434 F.3d 627, 631 (3d Cir. 2006).

## II.

In order to qualify for the discretionary relief of asylum, an alien must file an application "within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). We have no jurisdiction to review a finding of untimeliness, id. § 1158(a)(3), and we similarly cannot review the IJ's and the BIA's determination that there are no "extraordinary circumstances" which excuse untimely filing of an application, id. § 1158(a)(2)(D); Sukwanputra, 434 F.3d at 635.

Both the IJ and the BIA found that Ningsih did not file her application until more

4

than one year after she arrived in this country. They also ruled that this delay was not the result of extraordinary circumstances. We have no jurisdiction to review these conclusions. As such, petitioners' petition for review of the denial of their asylum application must be denied.

In order to be eligible for withholding of removal, an applicant must "demonstrate[] a 'clear probability' that, upon return to his or her home country, his or her 'life or freedom would be threatened' on account of race, religion, nationality, membership in a particular social group, or political opinion." Chen v. Ashcroft, 376 F.3d 215, 223 (3d Cir. 2004). "An alien who fails to establish that he or she has a well-founded fear of persecution, so as to be eligible for a grant of asylum, necessarily will fail to establish the right to withholding of removal." Id. "Persecution" requires " 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom,' " Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) (quoting Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993)), which are "committed by the government or forces the government is either unable or unwilling to control," Sukwanputra, 434 F.3d at 637. A pattern or practice of persecution requires that such persecution be " 'systemic, pervasive, or organized.' " Lie, 396 F.3d at 537 (quoting Ngure v. Ashcroft, 367 F.3d 975, 991 (8th Cir. 2004)).

To qualify for protection under CAT, the applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of

5

removal." 8 C.F.R. § 208.16(c)(2). Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person." Id. § 208.18(a)(1).

We review for substantial evidence, which requires us to examine the IJ's and the BIA's findings, including those of adverse credibility, to determine whether they are "supported by evidence that a reasonable mind would find adequate." Dia v. Ashcroft, 353 F.3d 228, 247–49 (3d Cir. 2003) (en banc). We may reverse a finding only when "no reasonable fact finder could make that finding on the administrative record." Id. at 249.

Petitioners argue that the findings of the IJ and the BIA are not supported by substantial evidence. We disagree.

First, there is substantial evidence in the record to support the IJ's finding that Ningsih "lacks the requisite credibility to have established any of her assertions." (A.R. 22.) During her testimony, Ningsih repeatedly changed her excuse for failing to timely file her application and indicated varying time frames for when she decided that she would seek asylum. When asked about a letter that she allegedly received from her pastor in Indonesia, Ningsih declared that the letter discussed the terrorist attack in Bali, even though that attack occurred one month after the letter was purportedly written. As such, the IJ's finding is clearly based on specific, cogent reasons in the record. See Dia, 353 F.3d at 250.

Second, the IJ's finding that the petitioners failed to establish past persecution is

supported by substantial evidence. Ningsih's claim essentially boils down to one incident—the harassment she suffered at the hands of several men on a bus. Ningsih claims no harm from that incident and admits that she never reported that incident to the police. She offered no evidence, much less evidence sufficient to upset the administrative findings, that the incident was anything other than general lawlessness by private individuals. Ningsih's other claims are of discrimination and do not rise to the level of persecution.[3]

Third, there is substantial evidence in the record to support the IJ's and the BIA's findings that petitioners have not shown a well-founded fear of future persecution.[4] Petitioners both testified that their families have remained in Indonesia without serious incident. This seriously undermines the reasonableness of their fears. See Lie, 396 F.3d at 537. In addition, petitioners have failed to establish that they will be targeted for persecution or that persecution of Chinese Christians by the Indonesian government, or forces it is unwilling to control, is "systemic, pervasive, or organized." The Country Reports cited by the IJ and the BIA support this conclusion.

Finally, petitioners failed to show that they were entitled to relief under CAT.

---

[3] As noted above, Sambor's claim of alleged persecution seems completely unrelated to his ethnicity and his religion.

[4] Of course, given the untimeliness of petitioners' asylum application, to qualify for relief they would need to show the clear probability of persecution required in order to be eligible for withholding of removal. Because they cannot meet the lower standard, we need not discuss this more stringent standard.

7

There is no evidence in the record that supports petitioners' contention that it is more likely than not they will be tortured upon their return to Indonesia.

## III.

For the foregoing reasons, we will deny the petition for review.